## MURPHY v. SAYLES.

1. LANDLORD AND TENANT—SUBLETTING—RIGHT TO QUESTION.
   One in possession as subtenant of a lessee could not question his landlord's right to sublet to him, so long as his use and occupation of the property remained undisturbed.

2. SAME—GENERAL RULE—SURRENDERING POSSESSION.
   It is the general rule that a tenant may not question his landlord's title without first surrendering to him the possession acquired under such relation.

3. SAME—NONPAYMENT OF RENT—FORFEITURE—EQUITY.
   Where plaintiff purchased the original lease and thereby

became the landlord of defendant, a subtenant through whom he obtained possession, which he wrongfully retained after the expiration of his term, a court of equity will not recognize or declare a forfeiture for nonpayment of the rent, defendant having offered to pay rent if put in possession.

Appeal from Muskegon; Sullivan, J.   Submitted January 25, 1918.   (Docket No. 140.)   Decided March 28, 1918.

Bill by George E. Murphy against Frank Sayles to restrain summary proceedings for the possession of leased premises.   From a decree dismissing the bill, plaintiff appeals.   Affirmed.

. *Cross, Foote & Sessions,* for plaintiff.

*Turner & Turner,* for defendant.

STEERE, J.   In this suit plaintiff Murphy seeks by injunction to restrain defendant Sayles from suing out a writ of restitution in certain summary proceedings wherein he had taken judgment, or otherwise interfering with Murphy's possession of certain premises described as No. 5 West Western avenue, in the city of Muskegon.

His bill was filed on May 29, 1917, after Sayles had obtained a judgment against Murphy for restitution of said premises in the circuit court of Muskegon county, affirming a judgment in summary proceedings begun before a circuit court commissioner in a case entitled *Sayles* v. *Murphy,* which was also appealed by Murphy to this court and the judgment sustained in an opinion written by Justice MOORE, reported *ante,* 73, to which reference may be made for a history of the litigation, with statement of the essential facts involved in both cases up to the time of filing this bill.   In that case Murphy sought to defend his possession under a distinct claim of

title, independent of his relations with Sayles, based upon a written transfer to him from Victor Tonnelier, dated April 10, 1916, of the property rights the latter had acquired from his brother, Charles Tonnelier, by a bill of sale of August 25, 1914, conveying certain personal property connected with and used in the theatrical business conducted at the premises in question. Neither of these instruments make reference to any lease, or purport to convey any leasehold rights, as disclosed by the documents themselves, and found by the three successive courts before which he made that contention.

On May 10, 1917, two days after judgment in the summary proceedings was rendered against him in the circuit court, Murphy thought he saw light in another direction, and proceeded to secure from Charles Tonnelier an assignment of the original ten-year lease given him by George McGowan, owner of the property. His attitude thereafter is thus stated by him:

"I claim I am the landlord of these premises and that Mr. Sayles is my tenant and that these assignments changed the relation so that I became landlord."

Though in possession and use of the property, he then demanded payment of rent from Sayles, followed by notice seven days later of his election to forfeit Sayles' lease, and on the same day filed this injunction bill to suppress further activity by Sayles in the summary proceedings.

To summarize briefly, the premises in question, known as the Lion Theater, were owned by George McGowan and leased to Charles Tonnelier for ten years by a conveyance containing authority to "sublet or re-lease," which right if exercised should "in no manner release said second party from his obligation to pay rent," etc. Tonnelier exercised this right twice, both times subletting the premises to Sayles, first, by a lease of January 27, 1914, for three years from Feb-

ruary 2, 1914, which contained a provision restraining assignment of the lease or subletting without written consent of fthe lessor; and, second, by a lease of December 9, 1915, for five years, to commence on February 2, 1917, or sooner if the premises became vacant. Sayles had turned over possession of these premises to Murphy on February 9, 1915, giving him a bill of sale transferring a quantity of theatrical appliances and paraphernalia together with "all the rights of the party of the first part in the lease of building in which is contained the Lion Theater belonging to said party of the first part and now in his possession," etc. Thus put in possession by Sayles, Murphy had undisturbed use and enjoyment of the premises during the life of that lease. Sayles became desirous of repossessing himself of the premises as soon as Murphy's right of possession from him expired, and to that end obtained a second lease from Tonnelier for five years, beginning at the expiration of his former lease, under which he had surrendered possession to Murphy, or sooner if the same became vacant. He notified Murphy of the new lease and his desire to take possession under it, to which Murphy replied that he would vacate the premises February 2, 1917, or sooner, as Sayles and his wife both testify. Murphy denies this, but admits he learned of the lease.

Although subsequently taking the position that he never was a subtenant of, or held possession under, Sayles, the testimony is convincing that Murphy recognized and admitted this at the trial of the summary proceedings in the commissioner's court. Not only is there other testimony to that effect, but the commissioner who heard the case and took notes of the evidence testifies positively that Murphy so stated. His position in this case is that he never was a tenant of Sayles or held in subordination to him but bought him

201—Mich.—6.

out, took an assignment of his lease, and under it independently took possession. This is not only inconsistent with his first position, but untenable; Sayles had no authority, under the lease which he then held, to sublet or assign without the written consent of his lessor. This he did not obtain, and Tonnelier appears to have interposed no active objection when he learned of it beyond reminding Sayles that he looked to him for the rent. The only right of possession Murphy had was acquired from Sayles, who put him in possession. As between them, Sayles' right to do this could not be questioned by Murphy, so long as his use and possession of the property remained undisturbed. By the terms of his lease Sayles was to pay his rent when due by depositing the same for Tonnelier in the National Lumberman's Bank of Muskegon. He neither obtained written permission from nor consulted Tonnelier when he turned possession over to Murphy, and testified that he told him he could not transfer the lease to him, but would stand behind him if anything happened, and directed him to make his payments of rent in Sayles' name, just as he had done, by deposit in the bank, which Murphy did for a time, advising Sayles of the fact and at one time showing him a receipt. Murphy denied any such agreement or understanding, but admitted that after taking possession he twice paid rent at the bank in Sayles' name, because, as he explained, Sayles requested it, and said "he didn't want to jump out of there right away and let people know he had quit all at once." How or to whom he thereafter paid rent, while holding under the first Sayles lease, he does not clearly state; but, referring to his subsequent bill of sale of personal property from Victor Tonnelier, of April 10, 1916, he says:

"It was by virtue of that assignment from Victor L. Tonnelier that I continued to occupy these premises

and I have paid the rent during that time to Mr. McGowan."

This is confirmed by McGowan, who testified that Murphy had paid him the rent every month from February 2, 1917, during which time witness recognized him as his tenant. To what extent McGowan's lessee, Charles Tonnelier, was consulted in the matter, is not disclosed.

It is undisputed that no rent was due on the original ten-year lease from McGowan to Tonnelier when the first lease from Tonnelier to Sayles, under which Murphy took possession, expired on February 2, 1917. Sayles then held a second lease which entitled him to possession from and after February 2, 1917, vesting in him all possessory rights Tonnelier would have had if such lease were not given. Under it he was entitled to summary proceedings to recover the leased premises. Murphy refused to surrender and maintained possession, asserting an untenable claim of paramount right under a bill of sale of personal property, conferring no possessory rights in the premises, which he had secured by assignment from Victor Tonnelier on April 10, 1916. He admits he knew of Sayles' second lease as early as March, 1916. Of his reason for filing this bill and tenacity in retaining possession, he says:

"My business is a moving picture show and I run what are known as serial pictures which I have to contract for ahead. All pictures have to be contracted for of any consequence. If I vacated the premises I am in at the present time and started in again I could not by any means start with the same advantage in relation to my pictures as I now have. * * * I have been in continuous and uninterrupted possession of these premises in dispute since the 2d day of February last. * * * I have never surrendered possession or offered to surrender possession to Mr. Sayles of this property and I never intended to surrender possession until I was forced out."

Neither of these parties own this property. Their contention involves only possessory rights between themselves as lessees. Sayles was in possession. Murphy made entry by his permission, with no right to possession from any other source. Sayles' landlord did not consent to it in writing, was not a party to their agreement, and apparently did not know of it at the time. Murphy admits that he at first paid rent to the bank in Sayles' name. In character, the possession which he took at the time of his entry was in subordination to and as tenant under Sayles. Between them the possession so taken remained stamped with that relation, and precluded him from setting up an adverse claim without first surrendering possession. No citation of authority to sustain the long-established rule that a tenant may not dispute his landlord's title without first surrendering to him the possession acquired under such relation, is necessary. The rule is thus clearly stated in the early case of *Bertram* v. *Cook*, 32 Mich. 518:

"Having obtained possession as tenant, he can do no act inconsistent with, or which would change the relation existing between himself and his landlord, without first yielding and delivering up to the latter possession of the premises which he acquired from him. The landlord has a right to rely upon the relation as a protection. To permit the tenant to do otherwise would be but holding out inducements to him to take advantage of his position for his own benefit and to the injury of his landlord. The law very wisely, therefore, holds all such agreements as being contrary to public policy and void, and sternly refuses to permit the person entering under such an agreement from obtaining any advantage thereby."

But aside from this infirmity, conceding, for the purpose of the proposition, that, unhampered by the nature of his entry and continuous possession under it, Murphy has by his belated purchase of the original lease become Sayles' landlord, with all the rights and

obligations the lease otherwise confers and imposes, he was nevertheless in possession and use of the property, refusing Sayles the possession and enjoyment his lease entitled him to, on other grounds than nonpayment of rent, and yet litigating that contention to this court at the time he served notice of forfeiture. He testified to the value of that possession to him, and that he never intended to surrender it until forced out. Sayles had offered to pay the rent his lease called for to his then landlord, Charles Tonnelier, even after he obtained judgment of restitution in the circuit court, and before the date of the assignment to Murphy on May 10th, which was refused, and when notice with demand from Murphy as owner of the original lease was served on him he again offered to pay the rent if they would give him possession.

While retaining the exclusive use, possession, and enjoyment of the property to himself, and refusing Sayles' right of entry on other grounds, Murphy was in no position to declare a forfeiture of Sayles' lease for nonpayment of rent, without first tendering him possession on payment, and in the meantime an equitable suspension of payment arose against him.

Under the circumstances disclosed by this record, an equity court will not recognize or declare a forfeiture, and the decree rendered by the Muskegon circuit court, in chancery, dismissing plaintiff's bill of complaint, is affirmed, with costs to defendant.

OSTRANDER, C. J., and BIRD, MOORE, BROOKE, FELLOWS, and STONE, JJ., concurred. KUHN, J., did not sit.